# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAWRENCE GLENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-383-STE |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for supplemental security income. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-20).

The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 12, 2016, the application date. (TR. 13). At step two, the ALJ determined that Mr. Glenn had the following severe impairments: schizoaffective disorder (bipolar type), PTSD, depression, anxiety, and chronic lumbosacral disease. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 14).

At step four, the ALJ concluded that Mr. Glenn was unable to perform any past relevant work, but retained the residual functional capacity (RFC) to perform light work with the following limitations:

> [Plaintiff] can occasionally push/pull including the operation of hand and foot controls; can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolding; can frequently balance; occasionally stoop, kneel, crouch and never crawl; has no manipulative, visual, communicative or environmental limitations; can understand, remember, concentrate and carry out simple work related tasks and instructions; can work with supervisors and co-workers on a superficial working basis; cannot work with the general public; can adapt to routine changes in the working environment.

(TR. 15, 19).

The ALJ then proceeded to make findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 19-20). Relying upon the testimony of the VE, the ALJ concluded that Mr. Glenn was not disabled based on his ability to perform the identified jobs. (TR. 20).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.  ISSUES PRESENTED

On appeal, Mr. Glenn alleges the ALJ erred by failing to weigh the opinions of his medical providers, improperly weighing other medical opinions, failing to weigh the third-party function report completed by his sister, "VE shopping," engaging in *ex parte* communications with the VE, improperly applying the special technique at Step Three, and failing to conduct a fair hearing.[1] (ECF No. 19:7-28).

## V.  ANALYSIS

### A.  Opinions from Medical Providers

Plaintiff alleges the ALJ failed to weigh the opinions of his treating physician, Dr. Fatema Haque, M.D., and his therapist, Ms. Brandie Strange, APRN-CNP. (ECF. 19:25-26). Further, Plaintiff contends the ALJ improperly weighed the opinions of two consultative examiners, Dr. R. Keith Green, Ph.D., and Dr. S.A. Chaudry, M.D. (ECF No. 19:24-25).

#### 1. Standard of Review for Medical Opinions

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th

---

[1] Plaintiff also asserts that jobs identified by the ALJ at Step Four "will not provide the constant verbal encouragement and reassurance that he is doing a good job that he requires." (ECF No. 19:26). Plaintiff does not develop this argument and reversal on this basis is not warranted. *See Mays v. Colvin*, 739 F.3d 569, 576 & n.4 (10th Cir. 2014) (declining to address argument not adequately developed or briefed).

Cir. 2004); 20 C.F.R. § 416.927(c). In determining what weight to accord any medical opinion, an ALJ must consider:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) the consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Hamlin*, 365 F.3d at 1215, n. 7; 20 C.F.R. § 416.927(c). Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."). And if the ALJ rejects an opinion completely, he

must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

For "other sources" who are not considered "acceptable medical sources," such as Ms. Strange, an ALJ should still explain the weight given to the opinion, but the evaluation "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-64 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6); *see also* SSR 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . .").

### 2. Dr. Haque and Ms. Strange's Opinions

Dr. Haque, Plaintiff's treating psychiatrist, signed a letter on July 14, 2016, noting Plaintiff's diagnoses of schizoaffective disorder, bipolar type, and PTSD and opining that Plaintiff was "unable to maintain gainful employment at this time." (TR. 587). Ms. Strange completed a function report on July 18, 2017, opining that Plaintiff suffered from emotional withdrawal and/or isolation, had marked restrictions of activities of daily living, marked difficulty in maintaining social function, and had deficiencies of concentration, persistence, or pace resulting in a frequent failure to complete tasks in a timely manner. (TR. 676-677). The report also indicated Plaintiff was extremely impaired in his abilities to: interact appropriately with the general public; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism from supervisors. (TR. 678). Further, Ms. Strange found Plaintiff had marked impairments in a

variety of functional areas, including in his abilities to: remember locations and work-like procedures; understand, remember, and carry out short and simple instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform and a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work-setting. (TR. 677-679). Ms. Strange also opined that Plaintiff had "difficulty with ability to maintain employment." (TR. 679).

The ALJ considered Dr. Haque and Ms. Strange's opinions as follows:

> Records from NorthCare/NorthRock reflect treatment and diagnoses for schizoaffective disorder (bipolar type) and PTSD. A letter dated January 14, 2016 from treating source Fatema Haque, M.D. indicated that [Plaintiff] was not able to maintain gainful employment at that time. The letter offered no clinical support for its conclusory finding and I find that clinical notes at the time did not support such a conclusion. [Plaintiff] was maintaining medication protocols and attending appointments with progress notes showing evolving improvement[.] Likewise a similar document signed by Advanced Practice Registered Nurse Brandie Strange, APRN-CNP dated July 17, 2017 reflects significantly reduced and limiting mental health capacities in social and intellectual function. No test results to support the findings were offered.

(TR. 17). (internal citations omitted).

Plaintiff contends the ALJ erred by failing to weigh these opinions. The Commissioner contends "the ALJ reasonably observed that [Dr. Haque and Ms. Strange's] conclusions were not well-supported by clinical findings and comments indicating that Plaintiff improved with treatment and medication." (ECF No. 22:13).

The Court recognizes that Dr. Haque's opinion involved an issue reserved to the Commissioner, and therefore, was not entitled to "any special significance." *See* SSR 96-

5P, 1996 WL 374183, at *3 (July 2, 1996). Even so, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." *Id.* Rather, "the ALJ must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Lackey v. Barnhart*, 127 F. App'x 455, 457-458 (10th Cir. 2005) (internal quotation omitted).

The ALJ did not explicitly weigh Dr. Haque's opinion that Plaintiff was unable to work, but it is clear he rejected it by finding him not disabled. The ALJ found that clinical notes did not support Dr. Haque's conclusion because they indicated Plaintiff was maintaining medication protocols and his progress notes showed "evolving improvement." (TR. 17). These reasons are not supported by substantial evidence.

A review of the progress notes from Plaintiff's visits to practitioners both before and after Dr. Haque's letter do not support the ALJ's finding they reflected "evolving improvement" or maintaining medication protocols. Plaintiff's initial visit with Dr. Haque was February 19, 2016. (TR. 543-546). At his next visit on March 24, 2016, Plaintiff showed improvement and Dr. Haque discontinued his use of Geodon. (TR. 549-552). At his May 19, 2016 appointment, Dr. Haque noted Plaintiff's condition was worsening and prescribed Risperidone in addition to his other medications. (TR. 559-562). On June 16, 2016, Dr. Haque found Plaintiff was improved, but his Prozac prescription was changed to Celexa. (TR. 565-568). On July 14, 2016—the date Dr. Haque opined Plaintiff could not work—Plaintiff's symptoms were again worsening and Plaintiff's medications again changed as his Celexa and Risperidone were discontinued, his Vistaril and Prozac were

8

increased,[2] and he was prescribed Latuda. (TR. 572-575). On August 11, 2016, Dr. Haque found Plaintiff's condition was worsening, and she prescribed Zyprexa, Plaintiff's Latuda was discontinued due to side effects, and his dosage of Lithium, Prozac, and Hydroxyzine was increased. (TR. 604-607). Later visits with other practitioners indicated that Plaintiff's condition was stable. (TR. 639, 645, 650, 653).

The Commissioner asserts it was reasonable for the ALJ to consider Plaintiff's improving symptoms with mental health counseling and medication. (ECF No. 22:11). And while the ALJ should consider such evidence, he may not ignore significantly probative evidence he rejects. *Clifton*, 79 F.3d at 1010. The medical record of office visits shows Plaintiff's condition worsened more often than it improved and stabilized only after a period of worsening. Further, Plaintiff's medications constantly changed, and his dosages were often increased. Thus, reasons given by the ALJ for rejecting Dr. Haque's opinion—"evolving improvement" and maintaining medication protocols—were not supported by substantial evidence.[3] Further, the ALJ failed to discuss evidence of

---

[2] Plaintiff was prescribed a 40 mg dose of Prozac, which was increased from the 20mg dose he took in May 2016. (TR. 563, 576).

[3] The Commissioner also suggests the ALJ considered Plaintiff's moods being reported as "'okay,' stable, better, and good most days." ECF No. 22:11 (citing Tr. 17-18, 549, 637, 643, 651). The ALJ, however, did not reference Plaintiff's reported mood at his appointments in the decision. See *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Plaintiff's worsening—probative evidence he apparently rejected. As such, the ALJ erred in considering Dr. Haque's opinion.[4]

The ALJ's failure to consider probative information related to Dr. Haque's records also impacted his consideration of Ms. Strange's opinion. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"); *id.* § 416.927(f)(1) (noting that opinions from medical sources who are not acceptable medical sources will be considered using the same factors as acceptable medical sources). Furthermore, the ALJ did not address Ms. Strange's treatment notes, which noted visual hallucinations and that Plaintiff saw a demon in his room. (TR. 651, 652). Indeed, treatment notes from his treatment at NorthCare indicated other instances in which Plaintiff heard voices or had visions. (TR. 521, 544, 648). These reports of hallucinations, which were not addressed in the decision, amount to probative evidence the ALJ should have considered when weighing Ms. Strange's opinion regarding Plaintiff's mental functioning.

On remand, the ALJ should properly consider and discuss uncontroverted evidence he chooses not to rely on as well as probative evidence he rejects, such as the evidence outlined above.

---

[4] The ALJ also found that Dr. Haque's letter in which she found Plaintiff could not work did not include clinical support. But, even when the opinion is on the ultimate issue of disability, the ALJ is required to "review all of the medical findings and other evidence that support a medical source's statement that [a claimant] is disabled." 20 C.F.R. § 416.927(d)(1). Limiting the discussion to the letter does not excuse the ALJ's error.

### 3. Dr. Green and Dr. Chaudry's Opinions

Both Dr. Green and Dr. Chaudry examined Plaintiff and issued reports. (TR. 656-675). The ALJ considered both reports and found: "I accord great weight to the findings of the consultative examiners, [Dr. Chaudry and Dr. Green,] as their respective independent findings support the [RFC] developed by me." (TR. 18). This analysis is deficient, as the ALJ did not utilize any of the proper factors when weighing the opinions. Instead, the ALJ gave the opinions great weight because they were in agreement with the RFC he formulated.

The Commissioner asserts that the ALJ's error is not reversible because neither Dr. Green nor Dr. Chaudry made opinions regarding Plaintiff's functional abilities. (ECF No. 22:13). This argument is without merit, as Dr. Green clearly opined on Plaintiff's functional abilities. In a medical source statement, Dr. Green found Plaintiff's ability to understand, remember, and carry out instructions were not affected by his impairments and that he had moderate limitations in his ability to interact appropriately with the public, his supervisors, and co-workers as well as his ability to respond appropriately to usual work situations and to changes in a work routine setting.[5] (TR. 657-658). Dr. Green also noted Plaintiff's "Marked social avoidance." (TR. 658).

Further, in support of this argument, the Commissioner cites *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004), noting that when an ALJ's conclusion does not conflict with the medical evidence, the need for express analysis is weakened. (ECF No. 22:13).

---

[5] The ALJ did not address these opinions in his decision.

But despite giving Dr. Green's opinion "great weight," the opinion does not fully conform with the RFC, as Dr. Green found Plaintiff had no limitations with regard to Plaintiff's ability to understand, remember, and carry out instructions (TR. 657), and the RFC limited Plaintiff to "simple work related tasks and instructions." (TR. 15). The Court finds the ALJ erred by not considering the proper factors when weighing Dr. Green's opinion.[6]

### B. Plaintiff's Other Assertions of Error.

Mr. Glenn also argues the ALJ: (1) failed to weigh the third-party function report completed by his sister; (2) engaged in impermissible "VE shopping;" (3) improperly engaged in *ex parte* communications with the VE; (4) did not properly apply the special technique at Step Three; and (5) failed to conduct a fair hearing. But the Court declines consideration of these issues, because the resolution of such issues may be affected following the remand for proper consideration of the evidence related to the opinions from medical providers. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

---

[6] More credence is given to the ALJ's argument with regard to Dr. Chaudry's findings. Dr. Chaudry's report largely consists of a narrative of Plaintiff's subjective reports, a summary of medical records, and a summary of test results. (TR. 667-673). An ALJ is not required to assign any specific weight to an assessment which "[does] not assign any functional limitations" to a claimant. *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (rejecting plaintiff's claim that the ALJ erred in not assigning the consultative examiner's opinion a specific weight because the physician failed to assign any functional limitations to the plaintiff). The Court notes, however, that Dr. Chaudry's report finds that Plaintiff "can sit for an hour at a time, stand one hour at a time, and walk unassisted for 45 minutes at a time." (TR. 667). The ALJ attributed that statement to Plaintiff's subjective report. (TR. 16). Whether the statement reflects a subjective complaint or an assessed limitation is not so clear, but the Court need not make a determination as to that issue.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on March 23, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE